## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LOIS WILSON FALANA,

      Plaintiff,

v.                                  Case No. 3:20-cv-628-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her application for a period of disability and disability insurance benefits ("DIB").  Following an administrative hearing on April 10, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision on May 15, 2017, finding Plaintiff not disabled from January 31, 2010,[2] the alleged onset date, through December 31, 2016, the date last insured.[3]  (Tr. 53-84, 110-25.)  However, the Appeals Council

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 14.)

[2] Although Plaintiff amended her alleged onset date to June 1, 2013 (Tr. 54), the ALJ refers to the original alleged onset date throughout his decision (Tr. 15-25).

[3] Plaintiff had to establish disability on or before December 31, 2016, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 16.)

vacated the ALJ's May 15, 2017 decision, and remanded the matter to the ALJ instructing, in relevant part, as follows:

- Evaluate the claimant's self-employment earnings in accordance with 20 [C.F.R.] [§] 404.1575, and Social Security Ruling 83-34.

- Further evaluate the claimants [sic] past work to determine whether it meets the regulatory requirements of past relevant work; whether it was accommodated or performed under special conditions[;] and whether the claimant is able to perform such work (20 [C.F.R.] [§§] 404.1560 and 404.1573(c)(2), (5) and (6))[.]

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert ["VE"] to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations under the guidelines in Social Security Ruling 82-41.

(Tr. 15, 126-30.)

After holding a supplemental hearing on remand on September 26, 2019, the ALJ again found Plaintiff not disabled from January 31, 2010 through December 31, 2016.  (Tr. 15-25, 34-49.)   Plaintiff is appealing the Commissioner's decision that she was not disabled from January 31, 2010 through December 31, 2016.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED.**

2

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

### A.    The Parties' Positions

Plaintiff raises two issues on appeal.  First, Plaintiff argues that "the Commissioner erred in finding that [her] earnings in a small family business rose to the level of Substantial Gainful Activity and in finding that the work constituted past relevant work."  (Doc. 19 at 8-16.)  Second, Plaintiff argues that Defendant committed reversible error in weighing the medical opinions of record.  (*Id.* at 16-23.)

Defendant counters that substantial evidence supports the ALJ's finding at step four[4] that Plaintiff could perform her past relevant work as a secretary and appointment clerk.  (Doc. 19 at 6-12.)  Defendant also counters that substantial evidence supports the ALJ's evaluation of the medical opinions of record.  (*Id.* at 12-19.)  The Court agrees with Plaintiff on the first issue and, therefore, does not address the remaining issues in detail.

### B.    Relevant Record Evidence and Hearing Testimony

Plaintiff's Work History Report dated January 23, 2015[5] lists the only

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

[5] The form itself is not signed or dated; rather the Court Transcript Index indicates that the Work History Report is dated January 23, 2015 and is "from [the] Field Office."  (Doc. 14-1 at 2.)

job she held in the preceding 15 years to be an "administrative" position in a construction business from September 1992 to December 2012. (Tr. 338.) Plaintiff's rate of pay was $150 per week and notes that she worked eight hours a day, five days a week. (Tr. 339.) Plaintiff did not use machines, tools or equipment, but she did engage in writing, completed reports, or other similar duties. (*Id.*) In each workday, she would walk for half an hour, stand an hour and a half, sit for six hours, reach for thirty minutes, and would write, type, or handle small objects for six hours. (*Id.*) Plaintiff would lift and carry office supplies. (*Id.*) The heaviest weight she lifted was twenty pounds and she frequently lifted less than ten pounds. (*Id.*) It was also noted, *inter alia*, that Plaintiff did not supervise other people in this job, and she was not a lead worker. (*Id.*)

According to an Adult Disability Report dated January 23, 2015,[6] Plaintiff stopped working on January 31, 2010 because of her medical conditions and for other reasons, including that the business closed and that she could not "stand for extended periods of time" or "walk extended distances due to arthritic knees." (Tr. 347.)

---

[6] The Report is not signed or dated; rather the Court Transcript Index indicates that it is dated January 23, 2015 and that it is from the Field Office. (Doc. 14-1 at 2.)

In an Adult Disability Report dated February 3, 2015,[7] Plaintiff stated that she stopped working in December of 2012 due to "arthritis" and because the "business closed." (Tr. 368.) Plaintiff indicated that in 2010 her condition became severe enough to keep her from working and that in 2011 her conditions caused her to make changes in her work activity. (*Id.*) As to her job history in the preceding 15 years, Plaintiff listed her job title as "all office manager" in a construction business she owned with her husband from September 1992 until December 2012. (Tr. 369.) The number of hours she worked per day varied, but she indicated that she worked five days per week. (*Id.*) Plaintiff listed her rate of pay amount as "as much as possible" and the frequency of pay as "not often enough." (*Id.*) She explained that she was "paid as income permitted but not regularly or hourly" and "only daily as permitted." (*Id.*) In terms of her duties, Plaintiff "ran [the] office, answered [the] phone, set appointments," and "[d]elivered some supplies as needed on jobs." (Tr. 370.) She stated that she did not use machines, tools or equipment, but used a calculator and engaged in writing. (*Id.*) She stated that in a workday, she would walk for half an hour, stand for fifteen minutes,

---

[7] The handwritten Report is also unsigned and undated; however, the Court Transcript Index indicates the Report is dated February 3, 2015 and is from Plaintiff. (Doc. 14-1 at 3.)

and sit and write for two to three hours.  (*Id.*)  Plaintiff did not supervise other people, she did not hire or fire employees, but she noted that she was a lead worker as she was the "only office worker in [the] construction company" she owned with her husband.  (*Id.*)

In a Work History Report dated July 3, 2015, Plaintiff listed her job title as "co-owner" of a construction business from 1992 to 2012, and as "1/4 co-owner" of the business in 2013.  (Tr. 392.)  Plaintiff listed her rate of pay as $300 per week and indicated that she worked "when possible."  (Tr. 393.)  Plaintiff stated that she answered the phone when it rang, "set appointments for estimates, kept receipts, did book, wrote payroll, filed taxes, [and] wrote proposals 'as needed.'"  (*Id.*)  She also stated that she would stand, sit, write, type, or handle small objects "as needed."  (*Id.*)  She did not walk, climb, stoop, kneel, crouch, or crawl and did not handle, grab, or grasp big objects.  (*Id.*)  Plaintiff listed the heaviest weight lifted as ten pounds.  (*Id.*)  She did not supervise any employees and was a lead worker as she was the "only office worker."  (*Id.*)  Plaintiff then commented as follows:

> 1.     This was a home[-]based business.  When calls came in[,] I ans[w]ered [them] [and] set appointments for estimates.
> 2.     [I] kept receipts – totaled them weekly into a "Dome Simplified Weekly Bookkeeping Record" Book[] for expenses and tax purposes.  These books were purchased [at] the office supply stores.
> 3.     Used computer: "Microsoft Office Home" program to type

proposals.

4.      Used home fax machine to fax paperwork when needed.

5.      Used calculator to total receipts and tax information for quarterly taxes, based on employee incomes and taxes withheld.

6.      I had no set pay rate.  I was paid as permitted after employees and expenses were paid.  All expenses.

7.      I was not confined to any space, other than my home.

(Tr. 399 (capitalization and emphasis omitted).)

Plaintiff's earnings during the relevant time period are as follows:

$8,200.00 in 2002; $10,850.00 in 2003; $3,107.05 in 2004; $4,512.45 in 2005;

$7,547.02 in 2006; $10,450.00 in 2007; $11,465.00 in 2008; $17,534.00 in

2009; $12,055.00 in 2010; and $5,833.00 in 2011.  (Tr. 316-17.)

At the first hearing before the ALJ in April of 2017, Plaintiff testified

that she and her husband opened the construction business in 1992.  (Tr. 55.)

Plaintiff stated that she worked in the home office and "used paper, not

computers."  (*Id.*)  She further described her work as follows:

A.      . . . I used paper and wrote everything out by hand.  I did have my own filing system.  I could answer the phone.  I could go places and leave the phone to answer itself on the answering machine.  I could go lay down.  I could go sit down or do whatever I needed to do - -
. . .

A.      . . . And I was basically free.  I mean[,] when the telephone rang[], I would answer the phone and I would make appointments for the people for my husband to go do the estimates . . . .
. . .

8

> A.    And that was, like I say, that was not a continuous thing
> where I was there all the time, where I had to be there and be in
> my desk all the time.  I could lay down.  I could go to sleep, do
> anything I wanted to do.  And we had that business from 1992
> until 2013.

(Tr. 55.)

On questioning by her attorney, Plaintiff testified that on average, she would work five hours per week, unless it was tax season when she would work between an hour and a half and two hours per day.  (Tr. 66-67.) Plaintiff also testified that she used a calculator to figure out wages when she did the payroll and bookkeeping, and stated that she "did everything" but that "everything was done on paper."  (Tr. 67.)  She stated she also used an adding machine and a computer on which she would write proposals once every two weeks.  (Tr. 67-68.)

At the first hearing, upon questioning by the ALJ, the VE provided two different titles for Plaintiff's prior work as follows:

> A.    I really have two different titles here for this one job.  The
> first I have is secretary.  It is DOT number 201.362-030.  The
> physical demand is listed sedentary and the SVP is 6.  However, I
> believe it was performed at a level 3 or 4 [of] SVP.  The other title
> is appointment clerk. . . .  The DOT number is 237.367-010.  It is
> listed sedentary and the SVP is 3.  Also, . . . I believe the work
> was performed in a way that is considered accommodated
> because of the flexibility of duties and when you could perform
> them. . . .

(Tr. 78-80.)  In response to questioning by Plaintiff's attorney, the VE

testified that Plaintiff's work, as performed and described, was not done in a competitive fashion, but rather in an accommodated fashion, and that "you couldn't duplicate that job in a competitive environment." (Tr. 82.)

At the second administrative hearing on September 26, 2019, Plaintiff testified that her husband made the managing decisions, including hiring and firing and deciding what jobs to work on. (Tr. 36-37.) Plaintiff testified that she did not have a set schedule and would work an hour a day and some days she would not work at all. (Tr. 37.) She also stated that "once in a while[,] [she] worked an hour and a half, two hours, but that was very rare." (*Id.*) She stated that her duties were to answer the phone, which would ring two or three times a day, but there would also be periods where there would be no calls for three or four days. (Tr. 37-38.) According to Plaintiff, her husband kept track of receipts and would bring them to her, she "wrote them in a book, and totaled them up at the end of the week," and kept a daily or weekly log. (Tr. 38.) She stated that these tasks would take her an hour or two at most, and she would then give the rough records to the bookkeeper but denied performing any accounting for the business. (*Id.*) Plaintiff also testified that her earnings were not reflective of the services she provided, but rather were based on "[a]bsolute need" to cover household expenses. (Tr. 39.) Plaintiff stated that her physical decline started in 2000 when she fell

10

off a horse.  (Tr. 41.)

Upon questioning, the VE provided the following testimony:

Q.    Ms. Collins, now, . . . in my review, if I find that the past
work was in fact substantial gainful activity, what we have in the
record classified is work as a secretary and appointment clerk.
The secretary was given to us as 203.362-030, sedentary, [SVP] 6,
actually performed with an SVP of 3 to 4.  An appointment clerk,
237.367-010, sedentary, [SVP] 3.  Would that be consistent with
what you've reviewed in the record?

A.    Yes . . . .  I would go further to say that it sounds that it
was performed at unskilled.

Q.    Okay.  So[,] let's say, for example, . . . both the secretary
and appointment clerk may be an SVP 2?

A.    Based on the claimant's testimony . . . and lack of
knowledge of computer programs, yes, sir.

(Tr. 43.)  In response to questioning by the ALJ, assuming Plaintiff's past

work was substantial gainful activity, the VE testified that a hypothetical

individual with Plaintiff's age[8] and education, and with the ability to perform

a limited range of light work, would be able to perform the Plaintiff's past

positions of secretary and appointment clerk as actually and generally

performed.  (Tr. 43-44.)  The VE stated that being off-task 20 percent or more

during the workday would preclude employment.  (Tr. 44-45.)  The VE also

testified that the work performed by Plaintiff was not performed in a

_____

[8] Plaintiff was 63 years old on the date last insured.  (Tr. 85.)

competitive capacity.  (Tr. 45.)

## C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Plaintiff engaged in substantial gainful activity from January 2010 through December 2011 pursuant to 20 C.F.R. §§ 404.1520(b) and 404.1571 *et. seq.* (Tr. 18.)  The ALJ explained his finding as follows:

> The claimant alleged disability beginning on January 31, 2010, the date the application was filed.  A review of her earnings record shows that she had earnings in 2011 of $5,833. The claimant has alleged disability from the alleged onset date of January 31, 2010 through the date last insured of December 31, 2016.  At the hearing, the claimant testified that she and her husband ran a business from 1992 through 2011.  She had a home office, with no computer, where she answered the phones and made appointments.  She had significant freedom in this position.  She did not have to sit at a desk on a continuous basis and was able to leave the house, lay down[,] and run errands.

> In order for work to be classified as past relevant work, it must be performed as substantial gainful activity (20 [C.F.R.] [§] 404.1560(b)(1)).  In order to determine if the claimant's self-employment earnings were substantial gainful employment, an evaluation is needed under a three-prong test for self-employment earnings that is different from the evaluation of substantial gainful activities for employees (20 [C.F.R.] [§] 404.1575[;] Social Security Ruling 83-34).  In addition, the claimant's testimony and work history reports suggest her past work may have been accommodated or performed under special conditions (Ex. 7D/3, 4; 12E/1, 8).  Further evaluation of the claimant's self-employment earnings is required to determine if the work was performed as substantial gainful activity, and [sic] it was accommodated or performed under special conditions (20

[C.F.R.] [§§] 404.1573(c)(2), (5), and (6)).[9]

The claimant's past relevant work was performed at substantial gainful activity (SGA) levels and was performed as self-employed work under Test One and Test Three. The claimant testified that she was the co-owner of a family business who did duties such as setting up and tracking the appointments of her husband. She performed significant services and received a substantial income from the business. The Vocational Expert testified that the claimant performed her work at a Specific Vocational Preparation level of two, in the unskilled range, due to a lack of knowledge of computer programs and based on her testimony regarding the functions she performed. Additionally, under Test Three, her services were valued as SGA based on the value of her services to the business.

The claimant's ability to perform work activity in the period since the alleged onset date shows a good ability to function and to interact with others, and indicates that the severity of the claimant's impairments are not as disabling as she has alleged in her application and hearing testimony.

(Tr. 18-19.)

The ALJ also found that there had also been "a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity" and that the remaining findings "address[ed] the period(s) the claimant did not engage in substantial gainful activity." (Tr. 19.) Then, at

---

[9] Of note, this paragraph was taken almost verbatim from the Appeal Council's May 30, 2018 order vacating the ALJ's first decision and remanding the matter for further consideration. (*Compare* Tr. 15 *with* Tr. 128.) Although the ALJ appears to repeat the Appeal Counsel's instruction that further evaluation was required to determine whether Plaintiff's work was accommodated or performed under special conditions under 20 C.F.R. §§ 404.1573(c)(2), (5), and (6), the ALJ does not engage in such an evaluation.

step two of the sequential evaluation process, the ALJ found that Plaintiff

had the following severe impairments: asthma, atrial fibrillation, and

osteoarthritis of the knees.  (*Id.*)  The ALJ also evaluated Plaintiff's

"medically determinable mental impairment of anxiety disorder," but

determined that it "did not cause more than minimal limitation in [her]

ability to perform basic mental work activities and was therefore non-severe."

(*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of

one of the listed impairments.  (Tr. 20-21.)

Then, before proceeding to step four, the ALJ determined that through

the date last insured, Plaintiff had the residual functional capacity ("RFC") to

perform a reduced range of light work, with the following limitations:

> . . . the claimant can occasionally balance and stoop, but cannot
> climb, kneel, crouch or crawl.  The claimant is limited to
> performing no more than occasional overhead reaching.  The
> claimant must avoid concentrated exposure to work around
> moving mechanical parts, work at unprotected heights and
> respiratory irritants, such as dust, fumes, and gases.

(Tr. 21.)

At step four, the ALJ found that, through the date last insured,

Plaintiff "was capable of performing past relevant work as a secretary and an

appointment clerk," and that this work "did not require the performance of

work-related activities precluded by the claimant's" RFC.  (Tr. 24.)  The ALJ

noted that in identifying Plaintiff's past work history, the VE pointed to two

positions: (1) "Secretary (210.362-030) SVP[]6, skilled, sedentary"; and (2)

"Appointment [C]lerk (237.367-010) SVP[]2, unskilled, sedentary."  (Tr. 24.)

According to the ALJ:

> The [VE] testified that claimant's job as a secretary is a
> sedentary exertion, skilled job as that job is described in the
> Dictionary of Occupational Titles (DOT), but performed by the
> claimant at the unskilled level as SVP[]2, due to a lack of
> knowledge of computer programs and based on her testimony
> regarding the functions she performed.  The [VE] testified that
> the claimant's job as an appointment clerk is a sedentary
> exertion, unskilled job as performed by the claimant and as
> described in the DOT.  As required by SSR 82-62, this work was
> substantial gainful activity, was performed long enough for the
> claimant to achieve average performance, and was performed
> within the relevant time period.  Assuming the claimant's [RFC]
> as assessed by the [ALJ] here, the [VE] testified that the
> claimant would be able to perform the requirements of the job of
> an appointment clerk, as actually performed by the claimant and
> as described in the DOT.  The [VE] testified that the claimant
> would be able to perform the requirements of the job as a
> secretary, as actually performed by the claimant.

(*Id.*)

The ALJ also stated that Plaintiff's "past relevant work was performed

at substantial gainful activity (SGA) levels and was performed as self-

employed work under Test One and Test Three."  (*Id.*)  The ALJ pointed to

Plaintiff's testimony that "she was the co-owner of a family business who did

duties such as setting up and tracking the appointments of her husband" and "that she performed significant services and received a substantial income from the business." (*Id.*)  According to the ALJ, the VE also testified that Plaintiff "performed her work at a[n] [SVP] level of 2, in the unskilled range, due to a lack of knowledge of computer programs and based on her testimony regarding the functions she performed." (*Id.*)  The ALJ also concluded that "under Test Three, [Plaintiff's] services were valuated as SGA based on the value of her services to the business." (*Id.*)

In finding that Plaintiff could perform her past relevant work, the ALJ further explained as follows:

> Therefore, in comparing the claimant's [RFC] with the physical and mental demands of the work as an appointment clerk, the undersigned finds that the claimant is able to perform this work as actually and generally performed, per the [VE's] testimony.  In comparing the claimant's [RFC] with the physical and mental demands of the work as a secretary, the undersigned finds that the claimant is able to perform this work as actually and generally performed, per the [VE's] testimony.  Pursuant to SSR 00-4p, the [VE's] testimony is consistent with the information contained in the [DOT].

(Tr. 24-25.)  Thus, the ALJ found that Plaintiff was not disabled.  (Tr. 25.)

### III.   Analysis

The Court finds that the ALJ committed reversible error by failing to provide adequate reasons for his conclusory findings at steps one and four

that Plaintiff's past work was Substantial Gainful Activity that she could return to. Specifically, the ALJ failed to articulate with sufficient specificity his reasoning in finding that Plaintiff's past work was substantial gainful activity under Test One and Test Three, and failed to evaluate whether Plaintiff's past work was performed with accommodations or under special conditions.

At step four, the ALJ will determine that a claimant is not disabled if she can return to her past relevant work. 20 C.F.R. § 404.1560(b). Past relevant work is substantial gainful activity that a claimant has performed within the past 15 years and has lasted long enough for the claimant to learn how to perform the job. 20 C.F.R. § 404.1565(a). Under the Regulations, "substantial work activity" is "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). The Regulations define "gainful work activity" as "work activity that" is done "for pay or profit." 20 C.F.R. § 404.1572(b). The Commissioner employs a three-part test to determine whether a claimant has engaged in substantial gainful activity as follows:

> (i)    Test One: You have engaged in substantial gainful activity if you rendered services that are significant to the operation of the business and receive a substantial income from the business.

> (ii)   Test Two: You have engaged in substantial gainful activity

if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(iii)   Test Three:  You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2).  "The Commissioner applies test one first and then, if the result is that the claimant has not engaged in substantial gainful activity, the Commissioner applies tests two and three."[10]  *Alzamora v. Comm'r of Soc. Sec.*, No. 6:18-cv-618-Orl-41TBS, 2019 WL 3044032, at *6 (M.D. Fla. Apr. 26, 2019) (report and recommendation adopted by 2019 WL 3037789 (M.D. Fla. July 11, 2019)) (citing 20 C.F.R. § 404.1575(a)(2)). Moreover,

[i]n determining whether a self-employed individual is engaging in SGA, consideration must be given to the individual's activities and their value to his or her business.  Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits. . . . Hence, it is necessary to consider the economic value of the individual's services, regardless of whether an immediate income results from such services.

---

[10] Test Two is not at issue here.

18

*Titles II & XVI: Determining Whether Work Is Substantial Gainful Activity-Self-Employed Persons*, SSR 83-34, 1983 WL 31256 (S.S.A. 1983) ("SSR 83-34").

Plaintiff contends that the ALJ erred in finding that her self-employed work met the requirements of Test One and Test Three and in failing to evaluate whether her past work was accommodated or performed under special circumstances. (Doc. 19 at 11-16.) Plaintiff also contends that the ALJ's "error in classifying her past work was harmful because if the ALJ erred in finding [Plaintiff] has 'past relevant work,' Grid Rule 202.04 directs a finding of disabled even if she can perform a full range of light work." (*Id.* at 16.) The Court agrees.

With respect to Test One, Plaintiff concedes that her reported earnings constitute substantial income, but disputes "that she performed 'significant services.'" (*Id.* at 12.) Under the Regulations, "significant services" are rendered in a business involving more than one person if the claimant "contributes more than half the total time required for the management of the business" or "render[s] management services for more than 45 hours a month regardless of the total management time required by the business." 20 C.F.R. § 404.1575(b). According to Plaintiff, she "testified that at most she

would work about seven hours a week, but indicated that was not even the norm – in other words, [] she might [work] 28 hours a month – far less than 45 hours a month." (*Id.*)  Plaintiff contends that the ALJ failed to "address the part of the regulation defining 'substantial services' even though on its face, [Plaintiff] would not come under the provision because she worked at most 28 hours a month and did not perform more than half of the total time required for management of the business." (*Id.*)  Thus, Plaintiff contends her "work activity did not rise to the level of SGA under Test One." (*Id.*)

Plaintiff also argues that the ALJ summarily concluded that Plaintiff's "work met the requirements of Test Three" and "failed to engage in any examination whether her work activity 'is clearly worth the amount shown in [the earning guidelines] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work [the claimant is] doing.'" (*Id.* (quoting 20 C.F.R. § 404.1575(a)(2)(iii)).)  Plaintiff asserts, *inter alia*, that the VEs at both hearings "concluded that as performed, the work was not even consistent with competitive employment" and that the "record simpl[y] contains no information to support that the amount earned was 'clearly worth' the amount reflected in the earnings record." (*Id.*)  Plaintiff also contends that "[t]he ALJ failed to support his finding as to Test Three with any evidence"

20

and "[i]nstead, the ALJ simply stated in a single sentence that the services were valuated as SGA based on the value of her services to the business even though there is no evidence of what such services would be valued [at] in a competitive work setting." (*Id.* at 14-15.)

Defendant counters that at step four, the ALJ properly relied on the VE's testimony in finding "that Plaintiff could perform her past relevant work as a secretary, as Plaintiff actually performed it, and an appointment clerk, both as the position is generally performed in the national economy and as Plaintiff actually performed it, and, therefore, she was not disabled." (Doc. 20 at 6.) Defendant contends that the record shows that Plaintiff was "employed as an 'administrative' or 'co-owner' or 'all office manager' from 1992 through 2012." (*Id.* at 9-10 (citing 338, 348, 369, 392).) Defendant also argues that Plaintiff's monthly average earnings for 2003, 2008, 2009, and 2010 were "above the regulatory guidelines and provide substantial evidence that her work as a secretary and [an] appointment clerk was [past relevant work] under the first and third test for determining if a self-employed claimant engaged in [substantial gainful activity]." (*Id.* at 10.) Defendant also argues that,

> . . . the secretary and appointment clerk jobs were past relevant
> work because Plaintiff performed "significant services" under the
> first test. Plaintiff points out that she testified at the second

> hearing she worked about seven hours a week, which would be
> less than 45 hours a month (Tr. 42). . . .  However, at the first
> hearing, Plaintiff testified that during tax season, she worked an
> hour and a half to two hours a day (Tr. 66-67).  Plaintiff did the
> payroll, bookkeeping, and wrote proposals (Tr. 67).  A Disability
> Report and a Work History Report submitted in connection with
> Plaintiff's application state that Plaintiff worked 8 hours per day,
> 5 days per week (Tr. 339, 348).  This record evidence is
> substantial evidence that Plaintiff performed "significant
> services" under the first test.  *See* 20 C.F.R. § 404.1575(b)(1).

(*Id.* at 11.)

It is undisputed that Plaintiff reported income at or above the SGA

levels.  While "[e]arnings reported on income tax returns raise a presumption

that the taxpayer was gainfully employed" that "presumption is rebuttable."

*Alzamora*, 2019 WL 3044032, at *6 (quoting *Johnson v. Sullivan*, 929 F.2d

596, 598 (11th Cir. 1991)).   However, for self-employed claimants, "[s]elf-

employment income alone is not a reliable factor in determining" substantial

gainful activity.  *See* SSR 83-34.

Here, after summarily concluding that Plaintiff's past work was

performed at substantial gainful activity levels and performed as self-

employed work under Test One and Test Three, the ALJ stated:

> The claimant testified that she was the co-owner of a family
> business who did duties such as setting up and tracking the
> appointments of her husband.  She performed significant services
> and received substantial income from the business.  The [VE]
> testified that the claimant performed her work at a[n] [SVP] level
> of two, in the unskilled range, due to a lack of knowledge of

> computer programs and based on her testimony regarding the functions she performed.  Additionally, under Test Three, her services were valued as SGA based on the value of her services to the business.

(Tr. 19.)  However, the ALJ failed to explain the logical connection between Plaintiff's duties "such as setting up and tracking the appointments of her husband" and why they were considered to be "significant services" to the business under Test One.  *See Aponte v. Astrue*, No. 6:11-cv-700-Orl-31MCR, 2012 WL 3231007, at *7 (M.D. Fla. July 12, 2012) (finding, *inter alia*, that "although the ALJ properly determined that [p]laintiff received the appropriate net earnings to find that he engaged in substantial gainful activity, he failed to properly consider whether [p]laintiff engaged in significant services for the business," and remanding with instructions to the ALJ to properly consider whether the plaintiff engaged in significant services for his business).  *But see Johnson v. Sullivan*, 929 F.2d 596, 598 (11th Cir. 1991) (concluding that the plaintiff had not rebutted the presumption created by the level of his income and noting "that claimant's services were absolutely essential to the business," that without his signature, "plats could not be legally certified and the business literally could not continue," and that "[t]he significance of the activity to the business is one of the factors to be evaluated under the regulations"); *Puga v. Berryhill*, No. 17-20358-CIV, 2018 WL

23

3328708, at *11 (S.D. Fla. July 6, 2018) (concluding that the "ALJ identified substantial evidence in the record supporting her finding that the plaintiff performed past relevant work as a telemarketer" and "properly relied on the VE's opinion, the plaintiff's testimony, notes from Social Security Administration interviews with the plaintiff, and the FICA earnings in the record").

Under Test Three, "[i]f the income received is an accurate representation of the value of a claimant's services, then the self-employed claimant is properly considered substantially employed, even though the contribution of services is not the same as that of an unimpaired person." *Johnson*, 929 F.2d at 598 (citing 20 C.F.R. § 404.1575(a)(2)).  Here, however, the ALJ also failed to provide adequate reasoning for his conclusory finding that Plaintiff's past work was significant gainful activity under Test Three. Instead, the ALJ simply stated that Plaintiff's "services were valued as SGA based on the value of her services to the business."  *See Judson v. Astrue*, No. 5:06-cv-346-Oc-10GRJ, 2008 WL 754729, at *3 ("While [p]laintiff may have been engaged in substantial gainful activity, the problem with the ALJ's decision is that the ALJ failed to identify and discuss in any meaningful manner the evidence that supported her conclusion.").  *But see Blackburn v. Comm'r of Soc. Sec.*, No. 8:16-cv03372-T-JSS, 2018 WL 948484, at *4 (M.D.

24

Fla. Feb. 20, 2018) (finding that "the ALJ provided sufficient reasoning and citations to the record in concluding that Plaintiff had performed SGA under Test 3" and that "the ALJ concluded that, based on Plaintiff's hearing testimony and the corporate tax returns contained in the record, Plaintiff's 'business generated significant income and paid significant expenses, primarily through her efforts—which efforts would surely have commanded more than $860-$1010 per month had they been delegated to another employee").

Additionally, "if work is done under special conditions it may not be classified as substantial gainful activity." *Henn v. Comm'r of Soc. Sec.*, No. 2:11-cv-385-FtM-29SPC, 2012 WL 2814011 at *12 (M.D. Fla. June 14, 2012) (report and recommendation adopted by 2012 WL 2813878 (M.D. Fla. July 10, 2012)) (citing 20 C.F.R. § 404.1573(c)).  As Plaintiff noted, "[i]n analyzing SGA, the ALJ was also required to evaluate whether the work was performed under special conditions," but failed to do so.  (Doc. 19 at 15 (quoting 20 C.F.R. § 404.1573(c)).)   Plaintiff argues that based on the VE testimony, including testimony that the past work was not performed on a competitive basis, as well as Plaintiff's testimony, "the ALJ erred in classifying [her] past work as SGA because her work was accommodated and performed under special circumstances." (*Id.* at 15-16.)  In response, Defendant argues, in

part, that the plain language of Test Three accounts for work activity that is "not comparable to that of unimpaired individuals," that "Plaintiff's earnings from self-employment as a secretary and appointment clerk meet the third test for SGA for self-employed income," and that "the job constitutes SGA even if it was performed with accommodations." (Doc. 20 at 11-12.) However, Defendant's arguments miss the mark.

As previously noted, the Appeals Council initially remanded the case to the ALJ to determine, in part, whether Plaintiff's past work met "the regulatory requirements of past relevant work," "whether it was accommodated or performed under special conditions," and whether Plaintiff was "able to perform such work." (Tr. 15, 126-30.) In his decision, the ALJ reiterated the Appeals Council's instructions, stating that "[f]urther evaluation of the claimant's self-employment earnings is required to determine if the work was performed as substantial gainful activity, and [sic] *it was accommodated or performed under special conditions*." (Tr. 19 (emphasis added) (citing 20 C.F.R. § 404.1573(c)(2), (5), (6))[11].) However, the

_____

[11] The ALJ also included the same citation to the regulations from the Appeals Council's order, specifically citing the following examples of the special conditions that may be considered, which may or may not show that a claimant has the ability or skills to do substantial gainful activity: "(2) You were allowed to work irregular hours or take frequent rest periods;" . . . "(5) You were permitted to work at a lower standard of productivity or efficiency than other employees;" or "(6) You were given the opportunity to work despite your impairment because of family

ALJ failed to further discuss or evaluate whether Plaintiff's work was "accommodated or performed under special conditions," or to determine what impact, if any, this had on his conclusion that Plaintiff's past work was substantial gainful activity.  While the ALJ appeared to acknowledge that further evaluation was required, he failed to address the issue altogether.  Thus, the Court agrees with Plaintiff that the ALJ's failure to evaluate whether her past work was "accommodated" or performed under "special conditions" also supports remand.  *See Henn*, 2012 WL 2814011, at \*12-14 (remanding for further development on the record as to whether plaintiff was engaged in SGA where she received a 20% accommodation at the workplace which the ALJ failed to consider); *see id.* at \*13 ("The presumption of substantial gainful activity based upon Plaintiff's 2008 earnings can be rebutted by evidence of the nature of the applicant's work, the conditions of employment, and the adequacy of the applicant's performance.") (citing 20 C.F.R. § 404.1573).

Because the ALJ fails to articulate his reasons for making these findings, the Court is left to guess as to the reasons for the ALJ's decision, thereby frustrating judicial review.  While Defendant submits that the ALJ

---

relationship, past association with your employer, or your employer's concern for your welfare."  20 C.F.R. §§ 404.1573(c)(2), (5), (6).

considered other relevant information in making this determination, the written decision does not indicate as much.[12] *Cf. Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline, however, to affirm simply because some rationale might have supported the ALJ's conclusion. . . . We are likewise unable to dispose of the waiver issue because of the incompleteness of the ALJ's findings.  In addressing that issue, the ALJ did properly set forth the applicable standard under the Social Security regulations.  Although the claimant clearly testified that she simply did not understand that having her name on her daughter's account would render her ineligible for benefits, the ALJ simply concluded, without addressing the credibility of her testimony, that the waiver provision should not apply.  Thus, we cannot determine whether the ALJ had substantial justification for his finding.") (footnote omitted).  As Plaintiff argues, this error is not harmless given the potential applicability of the Grids.  (*See* Doc. 19 at 16.)  Accordingly, remand is appropriate.  *See Alzamora*, 2019 WL 3044032, at *6 (quoting *Johnson*, 929 F.2d at 598) (finding that remand was appropriate in part because the Commissioner did not cite to any legal authority supporting the proposition

---

[12] Here, the ALJ made no alternative finding that Plaintiff could perform other available jobs even if she could not perform her past relevant work.  Thus, "no alternative basis exists for upholding the ALJ's decision." *Culver v. Astrue*, No. 5:10-cv-249/RH/EMT, 2011 WL 7039940, at *7 (N.D. Fla. Dec. 12, 2011) (report and recommendation adopted by 2012 WL 122605 (N.D. Fla. Jan. 15, 2012)).

that "merely because a claimant filed income tax returns, the ALJ is excused from employing the tests the Regulations assure will be utilized").

The Court may not engage in fact-finding or reweigh the evidence, therefore, this case will be remanded to the ALJ to consider the Plaintiff's past work in a manner consistent with this opinion and conduct any further proceedings deemed appropriate. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (stating that on remand the ALJ must reassess the entire record). Because these issues are dispositive, there is no need to address Plaintiff's remaining arguments. *See Knoblock v. Colvin*, No. 8:14-cv-646-MCR, 2015 WL 4751386, at *3 (M.D. Fla. Aug. 11, 2015) (internal citations omitted).

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to reconsider Plaintiff's past work in a manner consistent with this opinion and conduct any further proceedings deemed appropriate.

2.     The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.     In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth

by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on September 7, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record